IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COREY FERRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No: _____ |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| CITY OF WILMINGTON; ) | |
| JOHN HOBAN in his individual and ) | |
| official capacity as ) | |
| Deputy Chief; JOHN LOONEY in his ) | |
| individual and official capacity ) | |
| as Fire Department Chief; ) | |
| ANDRE COOPER in his individual and ) | |
| official capacity as Battalion Chief ) | |
| ) | |
| ) | |
| Defendants. | |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Corey Ferrell ("Plaintiff"), files this action against Defendants, City of Wilmington ("Defendant" or "City"), John Hoban in his individual and official capacity as Deputy Chief, John Looney in his individual and official capacity as Fire Department Chief, and Andre Cooper in his individual and official capacity as Battalion Chief for compensatory and punitive damages for violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. (hereinafter, "Title VII") and violations of 42 U.S.C. § 1983 for rights secured by the Fourteenth Amendment

### JURISDICTION

2. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff, Corey Ferrell, ("Plaintiff), is a resident of Wilmington, New Castle County, Delaware. At all times relevant to this Complaint, Plaintiff was an employee of Defendant City of Wilmington.

5. Defendant the City of Wilmington ("City"), is a municipal government existing under the laws of the State of Delaware pursuant to 40 Del. Laws, Chapter 179, as amended by 46 Del. Laws, Chapter 236, within the Wilmington City Code Art. I, § I-100.

6. Defendant John Hoban acted both individually and under color of law as an agent or employee of the City of Wilmington at all relevant times hereto.

7. Defendant John Looney acted both individually and under color of law as an agent or employee of the City of Wilmington at all relevant times hereto.

8. Defendant Andre Cooper acted both individually and under color of law as an agent or employee of the City of Wilmington at all relevant times hereto.

## ADMINISTRATIVE PROCESS

9. On September 20, 2018, Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") alleging race and religion discrimination and retaliation against Defendant City of Wilmington.

10. On February 4, 2021, Plaintiff received a "Final Determination and Right to Sue Notice" from the DDOL. *Exhibit A*.

11. On August 13, 2021, Plaintiff received Notice of Right to Sue from the Equal Employment Opportunity Commission. *Exhibit B.*

12. Plaintiff has filed this action under Title VII within ninety (90) days after receipt of his Right to Sue Notice from the EEOC.

13. Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

**Plaintiff Was Subjected to Constant Discrimination Because of His Race and Religion**

14. Plaintiff is a Muslim African American.

15. Plaintiff began his employment with Defendant City of Wilmington in 1998 in the position of firefighter. Plaintiff currently holds this position.

16. From virtually the beginning of Plaintiff's employment, he has been subjected to a hostile work environment because of his race and religion.

17. Shortly after being employed with Defendant City of Wilmington, Lieutenant Rossiter (Caucasian), acting as an agent of Defendant, called a black woman who was walking down the street a "black nigger bitch" while Plaintiff was riding in a truck with him.

18. Plaintiff reported the blatant racial slur to Wilmington Fire Department management.

19. Upon information and belief, despite Lieutenant Rossiter's admission of the statement, he was never disciplined for his behavior.

20. Plaintiff was subjected to retaliation for reporting Lieutenant Rossiter and was disciplined for insubordination.

21. Captain Hodge Nikki (Caucasian) referred to Plaintiff as "boy" and told Plaintiff "get away from me boy."

22. On multiple occasions, firefighters would physically harass Plaintiff and call Plaintiff a "black motherfucker", "black bastard" and refer to him as "you people" when he was at the Fire Department.

23. Plaintiff reported these statements directly to Deputy Chief William McKim.

24. Even though Plaintiff reported these racial slurs and derogatory terms to his superiors, the Caucasian firefighters were never disciplined.

25. Tom Ruger, the fire inspector, was asked if he wanted a slice of pizza. In front of several other members of the fire department, he stated, "no because Corey and them nigger fucked it with their fingers."

26. Tom Ruger, who is Caucasian, was never disciplined for his comments.

27. At all times, Wilmington Fire Department management were aware of the misconduct Plaintiff received, however, no actions were ever taken.

28. Furthermore, Plaintiff had to endure on an almost everyday basis comments and actions from other firefighters that would constantly degrade and insult Plaintiff's religion.

29. When Plaintiff would pray, firefighters would state to him "there goes ali baba on his magic carpet."

30. While at the station, firefighters would play the Aladdin theme song to Plaintiff whenever he would go to pray.

31. On another occasion at the fire station, other firefighters poured pork grease into Plaintiff's coffee cup, even after knowing he cannot consume pork because of his religious beliefs.

32. Plaintiff reported this to Battalion Chief Tim Perkins, however, no one was disciplined.

33. On Thanksgiving in 2017, Plaintiff's wife brought a turducken for the firefighters. When Plaintiff's wife arrived at the station, Captain Reece stated to Plaintiff "I did not think you shama-lama-ding-dong Muslims celebrated Thanksgiving."

34. On July 6, 2021, while Plaintiff was putting on his uniform, Plaintiff found an unopened can of pork sandwich meat in his coat pocket.

35. Probationary Firefighter Berl informed Plaintiff another firefighter, Terry Gatson, is the one who placed the can of pork in his gear.

36. The firefighters involved were all aware of Plaintiff's Muslim religion, which does not permit him to consume pork.

37. Plaintiff reported this to his officer Lieutenant Jeffrey Schaal who advised Plaintiff to write a statement.

38. After submitting the statement, Terry Gatson, who is Caucasian, was never disciplined.

**Plaintiff is Disciplined Harsher than non-African American and non- Muslim Firefighters**

39. Upon information and belief, none of the firefighters that made the above statements or actions were ever disciplined for their misconduct.

40. In or around June of 2018, right before Plaintiff's shift ended, Captain Reece came into the fire station and told Plaintiff to move his truck as he believed it was too close to the fire hydrant.

41. Plaintiff reported this to Lieutenant Leonetti on June 4, 2018, after Plaintiff believed the Captain was giving him unfair treatment.

42. Shortly thereafter, Plaintiff was at the fire station again when Captain Reese came in and stated to Lieutenant Lindell "why don't you learn to do your damn job and make Corey move that truck" since he again felt Mr. Ferrell's truck was too close to a fire hydrant again.

43. Lieutenant Lindell replied to the Captain that Plaintiff's truck was parked on a city street and not near the fire hydrant to which the Captain replied "I do not care, make him move it."

44. Following this incident, Plaintiff was suspended on June 27, 2018, for 45 days without pay.

45. Upon information and belief, Captain Reece and multiple other firefighters park in front of the fire hydrant at the station and are not disciplined nor told to move their truck.

46. The harassment and discriminatory discipline continued as Lieutenant Ryan Kincaid brought Plaintiff up on charges on September 18, 2019.

47. The reason for the charges was for wearing civilian clothes when responding to an emergency incident.

48. However, Plaintiff was in civilian clothes since the emergency occurred immediately upon Plaintiff's arrival at the station.

49. A trial board hearing was held, and Plaintiff was found not guilty.

50. Throughout his employment with Defendant City of Wilmington, Plaintiff had to endure disparate treatment by way of African American employees being disciplined harsher and more frequently than white employees.

**Plaintiff reports the harassment he endured**

51. In June of 2018, Plaintiff reported the discrimination and harassment he was enduring to Sheila Martin of Human Resources.

52. Plaintiff specifically told Ms. Martin he was being discriminated against by the City.

53. Plaintiff reported the fact that Lieutenant Lindell, a Caucasian firefighter, was charged with five violations of WFD policies, similar to the charges Plaintiff received, however, Lieutenant Lindell was not disciplined as harshly as Plaintiff.

54. Plaintiff further reported to Defendant that Acting Lieutenant Ryan Bowker, a Caucasian firefighter, assaulted and offensively touched a mentally disabled man while on duty, however, Defendant only gave Lieutenant Bowker a one-day suspension.

55. On yet another occasion, in or around February of 2019, Plaintiff reported the harassment he endured to Denecca Guile, a Compliance Specialist with Defendant.

56. During a diversity training in or around September of 2019, Plaintiff reported to Lori Brewington and Sheila Martin the harassment he suffered again.

57. After he reported the harassment to Ms. Brewington and Ms. Martin, Battalion Chief Perkins stood up and said, "were not going to talk about this now" and left the room.

58. After Plaintiff's multiple reports of the discriminatory treatment he was receiving, Defendant continued to take no action.

59. As a result of Defendant's severe and pervasive discriminatory conduct Plaintiff has been subjected to a hostile work environment which has caused him stress, anxiety, humiliation, insecurity and emotional damage.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

**COUNT I**
**Discrimination Based on Race in Violation of the Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et al.*)**
**Against Defendant City of Wilmington**

60. The allegations of Paragraphs 1 through 59 are incorporated by reference as if fully restated herein.

61. Defendant City of Wilmington employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

62. At all times relevant hereto, Plaintiff was employed by Defendant City of Wilmington and is an "Employee" as defined by 42 U.S.C. § 2000e(f).

63. Plaintiff received a Right to Sue letter from the EEOC on August 13, 2021. (Exhibit B). Plaintiff has satisfied all statutory prerequisites for filing this action.

64. Defendant City of Wilmington discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Defendant subjected Plaintiff to disparate treatment based upon his race, including but not limited to subjecting him to a hostile work environment, refusing to adequately investigate his claims and by providing unfair discipline to him and other African American firefighters.

65. Plaintiff was subjected to an abusive and hostile work environment because of his race.

66. The City's actions stated above are sufficient to support a continuing violation of race discrimination as they consist of a series of continuous acts that collectively constitute one unlawful employment practice.

67. The City's conduct motivated by race had the purpose and effect of creating an intimidating, hostile and offensive working environment.

68. The City's conduct had the purpose and effect of unreasonably interfering with Plaintiff's work performance and/or otherwise adversely affected Plaintiff's employment opportunities in violation of Title VII.

69. The discrimination Plaintiff endured was not isolated or sporadic incidents, and therefore, are part of the same unlawful employment practice.

70. The City knew or should have known of the conduct creating a hostile work environment and failed to take prompt and effective remedial action.

71. The discrimination and harassment were severe and pervasive, thus altering the condition of Plaintiff's employment and creating an abusive work environment.

72. The City acquiesced in the discriminatory and harassing conduct by creating and allowing to exist a hostile, intolerable, offensive and abusive workplace that a reasonable person would consider intimidating, hostile, or abusive.

73. The City has intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and as a result, is liable for punitive damages.

74. As a direct result of the discriminatory and wrongful conduct of Defendant City of Wilmington, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to his professional career and economic loss.

## COUNT II
**Discrimination Based on Religion in Violation of the Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et al.*)**
**Against Defendant City of Wilmington**

75. The allegations of Paragraphs 1 through 74 are incorporated by reference as if fully restated herein.

76. Defendant City of Wilmington discriminated against Plaintiff in the terms and conditions of his employment on the basis of his religion in violation of Title VII of the Civil

Rights Act of 1964. Defendant subjected Plaintiff to disparate treatment based upon his religion, including but not limited to subjecting him to a hostile work environment, refusing to adequately investigate his claims and by providing unfair discipline to Muslim firefighters.

77. Plaintiff was subjected to an abusive and hostile work environment because of his religion.

78. The City's actions stated above are sufficient to support a continuing violation of religion discrimination as they are a series of continuous acts that collectively constitute one unlawful employment practice.

79. The City's conduct motivated by religion had the purpose and effect of creating an intimidating, hostile or offensive working environment and had the purpose and effect of unreasonably interfering with Plaintiff's work performance and/or otherwise adversely affected Plaintiff's employment opportunities in violation of Title VII.

80. The discrimination Plaintiff endured was not isolated or sporadic incidents, and therefore, are part of the same unlawful employment practice.

81. The City knew or should have known of the conduct creating a hostile work environment and failed to take prompt and effective remedial action.

82. The discrimination and harassment were severe and pervasive, thus altering the condition of Plaintiff's employment and creating an abusive work environment.

83. The City acquiesced in the discriminatory and harassing conduct by creating and allowing to exist a hostile, intolerable, offensive and abusive workplace that a reasonable person would consider intimidating, hostile, or abusive.

84. The City has intentionally violated Plaintiffs rights under Title VII, with malice or reckless indifference, and as a result, is liable for punitive damages.

85. As a direct result of the discriminatory and wrongful conduct of Defendant City of Wilmington, Plaintiff has suffered and continues to suffer from severe emotional distress, humiliation, anxiety, irreparable damage to his professional career and economic loss.

## COUNT III
### 42 U.S.C. § 1983 –Hostile Work Environment
### Against all Defendants

86. The allegations of Paragraphs 1 through 85 are incorporated by reference as if fully restated herein.

87. The incidents of race and religion harassment described in the above paragraphs had the effect of substantially interfering with Plaintiff's work performance by creating a hostile, intimidating and offensive working environment amounting to discrimination in violation of Plaintiff's right under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

88. Defendants violated the rights secured to Plaintiff by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from race and religion discrimination in public employment in that, having actual or constructive knowledge of the harassment and discrimination, Defendants acted with deliberate indifference to Plaintiff's rights, in failing to intervene to stop the unlawful conduct.

89. These acts constitute a pattern, custom and practice in violation of plaintiff constitutional rights under 42 U.S.C. § 1983.

90. Defendants consciously acquiesced to the known discrimination by willfully failing to respond to it or take any action.

91. Defendants Deputy Chief John Hoban, Chief John Looney and Battalion Chief Andre Cooper, knew of the discriminatory conduct, acted with deliberate indifference and failed

to report or investigate the misconduct occurring at the Wilmington Fire Department, and thereby acquiesced the discriminatory behavior. This allowed Plaintiff to be continually discriminated against and subjected to a hostile work environment.

92. As a result of Defendant's deliberate indifference to Plaintiff's rights and acquiescence of the misconduct outlined above, Plaintiff continued to be harmed by the hostile environment Defendant created.

93. As a direct and proximate result of Defendant's acts and conduct which caused Plaintiff to be denied equal protection under the law, Plaintiff has suffered those emotional distress damages and losses alleged herein and has incurred attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendants to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all consequential damages, including but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C. Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

D. Awarding Plaintiff punitive damages.

E. Awarding Plaintiff an equal and additional amount as liquidated damages.

F. Awarding Plaintiff costs and reasonable attorney's fees.

G. Awarding Plaintiff pre and post judgment interest at the legal rate.

    H. Any and all such other relief as the Court deems appropriate under the circumstances.

             **ALLEN & ASSOCIATES**

             <u>*/s/ Michele D. Allen*</u>
             Michele D. Allen (#4359)
             4250 Lancaster Pike Suite 230
             Wilmington, DE 19805
             302-234-8600
             302-397-3930 (fax)
             michele@allenlaborlaw.com
Dated: November 10, 2021    *Attorney for Plaintiff*