IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COREY FERRELL,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF WILMINGTON; JOHN HOBAN in his individual and official capacity as Deputy Chief; JOHN LOONEY in his individual and official capacity as Fire Department Chief; ANDRE COOPER in his individual and official capacity as Battalion Chief,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 21-1593-RGA |

## **REPORT AND RECOMMENDATION**

      Plaintiff Corey Ferrell ("Plaintiff"), a firefighter with the Wilmington Fire Department, contends that the City of Wilmington and certain of its employees discriminated against him on the basis of his race and religion. Pending before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (D.I. 11.) For the reasons explained below, I recommend that the motion be GRANTED-IN-PART and DENIED-IN-PART.

**I.    BACKGROUND**

    **A.    Factual Background**

      I will summarize here the more pertinent allegations in the Amended Complaint. The Court must treat the following allegations as true for purposes of resolving Defendants' motion to dismiss. Plaintiff identifies as "a Muslim African American." (D.I. 10 ("Amend. Compl.") ¶ 17.) Defendant City of Wilmington (the "City") hired Plaintiff as a firefighter in 1998, and he has held that position ever since. (*Id.* ¶ 18.)

"From virtually the beginning of Plaintiff's employment" with the City, he has been subjected to continuing harassment regarding his race and religion. (*Id.* ¶ 19.) On multiple occasions, other firefighters called Plaintiff "black motherfucker," "black bastard," and "you people." (*Id.* ¶ 25.) A superior officer "referred to Plaintiff as 'boy' and told Plaintiff, 'get away from me boy.'" (*Id.* ¶ 24.) And, on at least two occasions, superiors referred to Plaintiff or someone else as a "n*****r" in Plaintiff's presence. (*Id.* ¶¶ 20, 28.) Plaintiff reported the incidents to his superiors, but the Caucasian perpetrators were not disciplined. (*Id.* ¶¶ 27, 30.)

Plaintiff's coworkers also made fun of his religion "[o]n an almost everyday basis." (*Id.* ¶ 31.) When Plaintiff prayed, other firefighters would say things like, "there goes ali baba on his magic carpet." (*Id.* ¶ 32.) They also played the Aladdin[1] theme song "whenever" Plaintiff went to pray. (*Id.* ¶ 33.) On one occasion, Plaintiff's coworkers poured pork grease into his coffee cup, knowing that Plaintiff's religious beliefs prohibited him from consuming pork products. (*Id.* ¶ 34.) Plaintiff reported the incident but no one was disciplined. (*Id.* ¶ 35.)

On November 23, 2017, Plaintiff's wife brought a turducken to the station for the firefighters. One of Plaintiff's superiors told Plaintiff, "I did not think you shama-lama-ding-dong Muslims celebrated Thanksgiving." (*Id.* ¶ 36.) And, on July 6, 2021, Plaintiff found an unopened can of pork sandwich meat in his uniform pocket and learned that a coworker had placed it there. (*Id.* ¶¶ 37–38.) Plaintiff reported the incident to a superior, but the perpetrator was not disciplined. (*Id.* ¶¶ 40–41.)

Sometime in June 2018, Captain Reece told Plaintiff to move his truck because it was too close to a fire hydrant. (*Id.* ¶ 43.) Plaintiff thought Reece was wrong, and Plaintiff told another superior that he was being treated unfairly. (*Id.* ¶ 44.) "Shortly thereafter," Plaintiff overheard

---

[1] Aladdin is an animated film based on an Arabic folktale.

Reese telling a different superior, "Why don't you learn to do your damn job and make Corey move that truck." (*Id.* ¶ 45.) When the superior responded that Plaintiff's truck was lawfully parked, Reese replied, "I do not care, make him move it." (*Id.* ¶ 46.) On June 27, 2018, Plaintiff was suspended for 45 days without pay in connection with the incident. (*Id.* ¶ 47.) A Caucasian superior officer was charged with similar violations but was not disciplined as harshly. (*Id.* ¶ 56.) In a separate incident, another Caucasian firefighter received a one-day suspension after he "assaulted and offensively touched a mentally disabled man while on duty." (*Id.* ¶ 57.)

Plaintiff reported his harassment and unequal treatment to the City's human resources and compliance representatives on multiple occasions, including in June 2018, February 2019, and September 2019. (*Id.* ¶¶ 54–61.) The City took "no action" in response to his complaints. (*Id.* ¶ 61.)

### B. Procedural History

Plaintiff filed two relevant Charges of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission ("EEOC"). (D.I. 12, Ex. A, C.) Plaintiff's first Charge of Discrimination is an EEOC Form 5 filed on January 15, 2019. (*Id.*, Ex. A ("First Charge").) Plaintiff checked off boxes on the form to indicate that he was alleging discrimination based on race, religion, and retaliation. (*Id.*) Plaintiff indicated on the form that he was subjected to the "[a]dverse employment action" of "harassment," and he described the 2017 Thanksgiving incident and the 2018 parking incident, for which he was suspended for 45 days without pay. (*Id.*) In the box titled "Date(s) Discrimination Took Place," Plaintiff listed "11-23-2017" under "Earliest," and "6-27-2018" under "Latest"; the checkbox labeled "Continuing Action" was not checked. (*Id.*) Plaintiff received a Right to Sue letter from the EEOC on August 13, 2021. (Amend. Compl. ¶ 66; D.I. 1, Ex. B.)

Plaintiff filed his original Complaint in this case on November 20, 2021. On December 28, 2021, Plaintiff filed his second Charge of Discrimination. (D.I. 12, Ex. C ("Second Charge").) The Second Charge lists the factual allegations from the First Charge and others. It describes the 2021 pork product incident and it alleges that "African American and non-muslim [sic] employees are disciplined more and more severely than white employees." (*Id.*) In the box titled "Date(s) Discrimination Took Place," Plaintiff listed "November 23, 2017" under "Earliest," and "August 8, 2021" under "Latest"; this time, the "Continuing Action" box was checked. (*Id.*) Plaintiff received a Right to Sue letter from the EEOC on March 11, 2022.

On March 22, 2022, Plaintiff filed an Amended Complaint in this case. It contains four counts. Count I names the City and alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Count II names the City and alleges religious discrimination in violation of Title VII. Count III alleges race discrimination in violation of 42 U.S.C. § 1981 and names the City and three individuals: Deputy Chief John Hoban "in his individual and official capacity," Fire Department Chief John Looney "in his individual and official capacity," and Battalion Chief Andre Cooper "in his individual and official capacity" (collectively, the "Individual Defendants"). Count IV is styled "42 U.S.C. § 1983–Hostile Work Environment," and it names the City and the Individual Defendants.

Defendants moved to dismiss all four counts for failure to state a claim. The motion is fully briefed, and I held a hearing on December 2, 2022. (D.I. 11–14; "Tr. __".)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A possibility of relief is not enough. *Id.*

In determining the sufficiency of the complaint under the plausibility standard, the court must "disregard[] a pleading's legal conclusions," then "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the Plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).  The inquiry is not "whether a plaintiff will ultimately prevail" but instead only "whether the plaintiff is entitled to offer evidence to support his or her claims." *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010).

**B.     Title VII**

"Title VII contains administrative remedies and procedures that a litigant must exhaust prior to asserting a private cause of action under the Act." *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 552 (D. Del. 2012).

> In the context of an aggrieved individual charging unlawful employment practices by an employer, the administrative procedures require the filing of a formal charge of discrimination with the EEOC within the required time.  In Delaware, a claimant filing a charge of discrimination under Title VII has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC.  If the agency does not take action within a specified time period, it must notify the aggrieved individual, typically with a right-to-sue letter, after which the individual has 90 days to file a civil action.  Both the 300-day limitation to file the charge of discrimination and the 90-day period for filing the court action are treated as statutes of limitations.

5

*Id.* at 553 (citations and footnote omitted).

## III. DISCUSSION

### A. Count I states a claim of racial discrimination.

Count I alleges that Plaintiff was subjected to disparate treatment on account of his race. It alleges that, in 2018, Plaintiff suffered an adverse employment action in the form of a 45-day suspension for parking his truck too close to a fire hydrant, but firefighters of a different race received lesser penalties for similar or worse infractions.

Defendants do not dispute that Plaintiff has exhausted a disparate treatment claim based on his 2018 suspension and that the claim was timely filed. (Tr. 6.) Defendants contend that the disparate treatment claim in Count I should nevertheless be dismissed because Plaintiff's proposed comparators are not similarly situated. For example, Defendants point out that two of the alleged comparators are higher in rank than Plaintiff. But Defendants have not explained why that, or any of the other asserted differences, is dispositive to the question of whether the comparators are similarly situated.[2]

Whether an asserted comparator is similarly situated is generally a question of fact and should be decided on a complete record, not a motion to dismiss. *Monaco v. Am. Gen. Assur. Co.*,

---

[2] *See, e.g., Boyer v. City of Philadelphia*, No. 13-6495, 2015 WL 9260007, at *6 (E.D. Pa. Dec. 17, 2015) ("Defendants provide no explanation of why rank is relevant to discipline. Unless the Police Department's disciplinary policy provides that police officers, like plaintiff, are punished differently than captains or lieutenants for the same conduct, their positions are irrelevant to disciplinary treatment and they may be considered comparators."); *Chan v. Cty of Lancaster*, No. 10-3424, 2013 WL 2412168, at *17 (E.D. Pa. June 4, 2013) ("Importantly, defendants have not suggested . . . that the County's ethics policy which they contend plaintiff violated, differs from the ethics policy applicable to [the putative comparators] or any other County employee."); *see also Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011) ("[W]hen a plaintiff and his supervisor were accused of making similar mistakes, were equally responsible for avoiding those mistakes, and were disciplined by the same superior, the plaintiff can make a realistic comparison with his supervisor for purposes of establishing a prima facie case of discrimination.").

359 F.3d 296, 305 (3d Cir. 2004) (explaining that the determination of "who might qualify as a similarly situated employee" is "a fact-intensive inquiry on a case-by-case basis"). Accordingly, I recommend that the Court deny Defendants' request to dismiss Count I.[3]

### B. Count II states a claim of religious discrimination.

Count II alleges that Plaintiff was subjected to a hostile work environment on account of his religion. Defendants say that Count II should be dismissed because the incidents alleged in the Amended Complaint are unexhausted and/or untimely. I disagree.

---

[3] Defendants contend that the allegations set forth in Count I are insufficient to state a claim of racial discrimination under a hostile work environment theory. However, as set forth above, Plaintiff has sufficiently pleaded at least one viable theory of racial discrimination so Count I will be moving forward, regardless of the sufficiency of Plaintiff's hostile work environment allegations.
    I recommend that the Court decline at this stage to preclude Plaintiff from pursuing a hostile work environment theory under Title VII. Defendants' argument, essentially, is that the 2018 suspension is a "discrete act" that cannot be aggregated with the earlier alleged incidents for purposes of establishing a single hostile work environment practice, and that the earlier incidents are untimely. Judge Andrews expressed skepticism about a similar argument in *Hantz v. Div. of State Police, Dep't of Safety & Homeland Sec.*, No. 21-801-RGA, 2022 WL 1523064, at *3 n.1 (D. Del. May 13, 2022), and rightly so. Regardless, the allegations in the Amended Complaint—viewed in the light most favorable to Plaintiff—are enough to plausibly suggest that he was subjected to harassment based on race that extended into the 300-day limitations period. (*See, e.g.*, Amend. Compl. ¶¶ 21, 25, 27, 30, 61, 62; Tr. 25–29.) *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006))). And I agree with Plaintiff that he has plausibly alleged a hostile work environment that falls within the scope of his EEOC charges. (D.I. 12, Ex. A (Charge of Discrimination with box checked for "race" and stating that the "[a]dverse employment action" was "harassment"), Ex. C (boxes for "race" and "Continuing Action" checked).)
    I also note that, because I conclude below that Plaintiff can move forward on his religious hostile work environment claim, the temporal scope of discovery will be the same regardless of whether the Court knocks out Plaintiff's racial hostile work environment claim at this stage. Of course, Defendants are free to pursue evidence in support of their arguments and raise them at the summary judgment stage of the case, as appropriate. The effect of any temporal interruptions in a pattern of hostility can be assessed at that time.

Plaintiff has alleged a timely claim of hostile work environment based on religion. As the Supreme Court has concisely explained,

> [a] hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165–66.

Here, Plaintiff has alleged an incident within the limitations period: the July 6, 2021 incident in which another firefighter put a can of pork in Plaintiff's coat, knowing that Plaintiff's religion forbids him from eating pork. (Amend. Compl., ¶¶ 37–39.) Plaintiff further alleges that, notwithstanding his complaints to the City, his coworkers made derogatory comments relating to his religion "on an almost everyday basis." (*Id.* ¶ 31.) He also alleges a number of other incidents that plausibly suggest a pattern of derogatory comments and actions by Plaintiff's colleagues and superiors regarding Plaintiff's religion. (*Id.* ¶¶ 31–34.) And, he alleges that he reported the

8

misconduct to multiple supervisors and human resources personnel on multiple occasions, but no action was taken.  In sum, Plaintiff has plausibly alleged a pattern with at least one act in the limitations period, so I can't say at this stage that his claim is untimely.

Defendants point out—and Plaintiff doesn't dispute—that a break of longer than 300 days between incidents will preclude Plaintiff from relying on the earlier incidents to demonstrate a hostile work environment.  (Tr. 25.)  But the effect of any temporal interruptions in a pattern of hostility will have to be assessed on a more complete record, not on a motion to dismiss.  At this point, the Court must accept as true Plaintiff's allegation that he was subject to comments about his religion "on an almost everyday basis."  (Amend. Compl. ¶ 31.)

I also reject Defendants' argument that Plaintiff failed to exhaust a hostile work environment claim based on religion.  "The relevant test in determining whether a plaintiff has exhausted his administrative remedies is 'whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'"  *Navarro v. Wal-Mart Assocs., Inc.*, No. 19-201-LPS, 2020 WL 777202, at *3 (D. Del. Feb. 18, 2020) (citation omitted).  Plaintiff's First Charge checked the "religion" box and alleged that the conduct being challenged was "harassment."  (D.I. 12, Ex. A.)  *Cf. Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999) (concluding that the phrase "abusive environment" in an EEOC charge was sufficient to exhaust the plaintiff's hostile work environment claim).  It also lists the 2017 Thanksgiving incident and alleges that a superior told Plaintiff, "I did not think you sham a lam a Muslim ding dongs celebrated Thanksgiving."  (D.I. 12, Ex. A.)  Plaintiff's Second Charge contains the same allegations and also describes the 2021 incident in which Plaintiff found pork in his coat pocket.  (*Id.*, Ex. C.)  It likewise alleges "harassment" based on "religion," and the "Continuing Action" box is checked.  The acts and hostile work environment alleged in the

Amended Complaint are fairly within the scope of Plaintiff's EEOC charges and the investigation that could be expected to arise from those charges.

Accordingly, I recommend that the Court deny Defendants' request to dismiss Count II.

### C. Count III should be dismissed.

Count III of the Amended Complaint asserts a violation of 42 U.S.C. § 1981 against all Defendants. Plaintiff agrees that this count may be dismissed (D.I. 13 at 1), so I recommend that the Court dismiss it.

### D. Count IV should be dismissed.

In Count IV of the Amended Complaint, Plaintiff alleges that he was subjected to a hostile work environment in violation of 42 U.S.C. § 1983. Plaintiff's counsel agreed during the hearing that dismissal of Count IV is appropriate as against the Individual Defendants in their individual capacities. (Tr. 33–34.)

What's left of Count IV is Plaintiff's claim against the City and the Individual Defendants in their official capacities. Plaintiff agrees that Count IV cannot go forward unless Plaintiff's injury was caused by a policy, practice, or custom attributable to the City. (Tr. 34.) *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. N.Y.C.*, 436 U.S. 658 (1978)); *Bielevicz v. Dubinon*, 915 F.2d 845, 849–50 (3d Cir. 1990). To survive a motion to dismiss, the Amended Complaint must allege (among other things) facts supporting both a plausible inference that there was a policy or custom that caused Plaintiff's injury and a plausible inference that the City was the deliberate, "moving force" behind it. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *Earl v. Harris*, No. 22-1026-RGA, 2022 WL 17475482, at *8 (D. Del. Dec. 6, 2022).

Plaintiff's Amended Complaint doesn't contain facts plausibly suggesting that the City was the moving force behind any policy or custom that caused him to be subject to a hostile work environment. Accordingly, Count IV should be dismissed.

## IV. CONCLUSION

In light of the conclusions stated above, I need not address the remaining arguments. For the reasons stated, I RECOMMEND that Defendants' motion to dismiss (D.I. 11) be GRANTED-IN-PART and DENIED-IN-PART:

1. As to Counts I and II, the motion should be denied.

2. As to Counts III and IV, the motion should be granted. Counts III and IV should be dismissed without prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 1, 2023

                                                                                                                                 _____
                                                                    The Honorable Jennifer L. Hall
                                                                     UNITED STATES MAGISTRATE JUDGE